# EXHIBIT A

Fentriss Eugene Winn
2321 East 4th Street #612
Santa Ana, Ca. 92705
coachwinn@gmail.com
760-717-3077

**Assigned for All Purposes**
Judge James Crandall

IN THE SUPERIOR COURT OF THE STATE OF CALIFORNA

30-2021-01232484-CU-CR-CJC

**Fentriss Eugene Winn**

**PLAINTIFFS,**

V.

**SANTA ANA UNIFIED SCHOOL DISTRICT**

,

**DEFENDANTS.**

COMPLAINT Title VII Civil Rights
Act of 1964, § 706(g) (42 U.S.C.A.
§ 2000e-5(g)) and the California
Constitution. Violation of
Government Code 12940(a)RACE

COUNTY of ORANGE

COMES NOW Fentriss Winn, Plaintiff in the above entitled and numbered cause, files

this Complaint against Defendant, Santa Ana Unified School District and in support thereof

would show unto the Court the following matters and facts.

1.     This is an action for damages based upon unlawful employment practice

committed by Defendant Santa Ana Unified School District, and jurisdiction of this Court is

invoked pursuant to the provisions of Title VII of the Civil Rights Act of 1964, § 706(f) (42 U.S

A; A § 2QOOe-5(f)).

COMPLAINT

2.      Such Promotion discrimination is prohibited under Title VII of the Civil Rights Act and under the California Fair Employment and Housing Act. to wit discrimination based on: Race, Color, or National Origin, or Ethnicity.

3.      The claims asserted in this complaint arose in this District and Division. Plaintiff is a citizen of the United States and was a resident of the County of Orange. State of California during the course of his employment with Defendant.

4.      Defendant Santa Ana Unified School District is a public entity corporation organized and existing under the laws of the State of California.

5.      Plaintiff brings this action pursuant to the provisions of Title VII of the Civil Rights Act of 1964, §§ 704(a) and 706(g) (42 U.S.C.A. § 2000e-3(a), 42 U.S.C.A. § 2000e-5(g)), for damages to compensate him for the economic loss and other damages caused by Defendant's unlawful employment practice committed against Plaintiff because Plaintiff was a member of the African American race. Plaintiff was hired by Defendant on or about *09/15/2009* and began work for Defendant on or about *12/13/2009* Because of the continuing discrimination and harassment Plaintiff has suffered by the acts of the Defendant (has suffered great financial and mental harm).

6.      In October of 2018, Plaintiff applied for the position of Director of Building Services for the Santa Ana Unified School District. At the time of Plaintiff's application, Plaintiff held the position of Manager 1, Building Services for the Santa Ana Unified School District.

7.      Plaintiff proceeded through the application process, including a district-level human resource paper screen, a first and second-panel interview, and a writing sample. Orin Williams, Assistant Superintendent of Facilities and Governmental Relations, told Plaintiff that

COMPLAINT                                                                                                          2

he was the recommendation to the School Board by the Superintendent's office shortly after the interview process concluded. Mr. Williams said no official announcement would be coming until the next board meeting.

8.  On the night of the board meeting, Mr. Williams called Plaintiff to tell him that there was a problem with the Board approving Plaintiff's recommendation. Plaintiff asked at that time, "What was the issue with the Board approving (the) recommendation?" Mr. Williams said he was not sure, but members of the Board did not think Plaintiff would be a good fit. He said to let him talk to the Board and try to get the Superintendent's recommendation approved. Mr. Williams ended the conversation by saying they do not know you but need to know more about you. In the meantime, he said, "we are going to make you the Interim Director of Building Services," effective on December 18, 2018.

9.  Plaintiff was not approved for the position after being the recommendation from the Superintendent's office after the process.

10.  Plaintiff was not allowed to fulfill the Superintendents recommendation and began a probationary period as the Director, as other non-African American candidates receive once appointed.

11.  The school board rejected the Superintendent's recommendation of Plaintiff to the Director's position but then named Plaintiff as Interim Director; therefore was fit for Director's position.

12.  Plaintiff was the only Manager or Director who earned a selection from the Superintendent's office that was not allowed to take the permanent position.

13.  The district opened the Director of Building Services position two weeks after Plaintiff was appointed Interim Director. Plaintiff spoke with Orin Williams shortly after the

COMPLAINT                                                                                    3

position opened, and he instructed Plaintiff to re-apply. He said to do the best you can as the current position of Interim Director to show the Board you can lead the department. He ended the conversation by stating, "that still may not be enough."

14.     Plaintiff re-applied for Director of Building Services on January 28, 2019, while being in the role of Interim Director. Plaintiff was allowed to take the position of Interim Director, he believes, so that Mr. Williams and the Board could make the job as difficult as possible by not staffing or supporting him. By doing this, they could later say he struggled in the interim position. Plaintiff was in a system that held Plaintiff to a different standard; he decided to trust the process and win the position again. After being named Interim Director and taking over the department's helm, the new interviews took place on or about February 14 of 2019.

15.     Plaintiff had proceeded through the first round of interviews. Before the 2nd round of the interview, his colleague and Manager 1 of Building Services, Brian Allen, informed Plaintiff that Orin Williams had called him to his office to prepare him for the upcoming interviews. Plaintiff asked Brian whether Orin was going to be a part of the process? Brian stated that he was uncomfortable with the meeting and that Orin also shared with him what the writing sample would be about and encouraged him to practice. He also instructed Brian on how to answer questions for the upcoming second and final interview.

16.     In every interview panel the Plaintiff had attended at Santa Ana Unified School District during the interview process, a four- or five-person group was the minimum. During the second and final interview, the panel was Orin Williams and Mark McKinney. Orin, who had helped another finalist with testing and application information, and Mr. McKinney, who was a couple of months away from retirement. Defendants discriminated against and perpetuated

COMPLAINT                                                                                                   4

racism by manipulating the outcome. If a four or Five-person panel were in the process, it would be more challenging to manipulate the system for racist purposes.

17. After the process and a few days before the board meeting when the Director position decision was announced, Plaintiff was invited to lunch with Brian Allen and Orin Williams. Brian Allen called the lunch meeting because he was concerned about Plaintiff's treatment by Orin Williams. He did not want Plaintiff to go to the board meeting to find out that he was no longer going to be Interim Director or getting the Director's position.

18. Orin Williams told Plaintiff that Brian was getting the position and tied his hands. Plaintiff said, "what do you mean by that?" He said the Board was not comfortable with an African American leading the 98% Latino/Mexican department. Plaintiff was shocked by this, but more disappointed because deep down, he knew his skin color was always front and center throughout his prior hiring process in the Santa Ana Unified School District, from applying for a Manager's position in 2017 and being denied the initial promotion to his experience applying for to the Director's job. The school board was unwilling to have an African American in the Director's position and initially did not want African Americans in a Manager's position.

19. Plaintiff applied for open competitive positions. Although he was the top candidate based on scoring criteria by the district, Plaintiff was denied a permanent position and instead was made interim on two occasions. Plaintiff was the only manager who applied for a permanent position in the Building Services department that was denied an earned position, and instead made an interim so the position could be reposted, allowing the district to hire a non-African American.

20. Plaintiff was denied an opportunity to get additional training because Plaintiff is black, but since Plaintiff's rejection to get approved to attend the CASH maintenance cohort at

COMPLAINT

least 3-4 Latino co-workers have been approved.  Plaintiff has longer tenure and a position aligned with the training program.  Plaintiff was denied limiting Plaintiff's ability to use the additional training in future job promotions.

21.     The district is aware of other African American employees who have experienced blatant violations of the civil rights act of 1964 in relation to race.

22.     Due to Defendant's wrongful job advancement practice, Plaintiff was ignored for consideration as Director. At the same time, Latino, Hispanic, and Caucasian employees with less seniority and education and no higher qualification than Plaintiff were made Director or put in positions of Interim Director without an application process. As a result, Plaintiff became increasingly dissatisfied with this racist treatment at his job and made complaints to his supervisors, who failed or refused to consider a fair process relating to Plaintiff's grievances, all of which constituted further discrimination against Plaintiff. All the above-described conduct resulted in precluding the promotion of Plaintiff from which Plaintiff seeks recovery of damages.

23.     Plaintiff also alleges that after the charge against Defendant was served by the DFEH/EEOC.  DFEH/EEOC has endeavored to eliminate the unlawful practices by informal methods of conference, conciliation, and persuasion, but such conciliatory efforts have failed. On or about October 3. 2021, Plaintiff received notice of such failure in the form of a written letter pursuant to § 706(e) of Title VII (42 U.S.C.A. § 2000e-5(e)) from the DFEH/EEOC which gave Plaintiff notice of the right to institute civil action within 90 days after receipt of notice.

24.     As a direct and proximate result of Defendant's acts, Plaintiff has suffered economic and other loss. Plaintiff has devoted a substantial portion of his work life to the

COMPLAINT                                                                                                    6

employment of Defendant. Due to age, Plaintiff has lost all possibility of obtaining the rights which attached to seniority on jobs and possible retirement benefits. Plaintiff has also suffered great economic harm in that for the twelve years he has been employed by Defendant this job advancement policy resulted in a continuing discrimination, despite Plaintiff's efforts to achieve and advance.

25.    Because of the damages sustained, Plaintiff is entitled to such affirmative relief as may be appropriate, including, but not limited to, lost wages and lost retirement benefits pursuant to the provisions of Title VII Civil Rights Act of 1964, § 706(g) (42 U.S.C.A. § 2000e-5(g)) and the California Constitution. and the California Constitution and institutional discrimination concerning race as a protected class by the civil rights law of 1964. Violation of Government Code 12940(a)RACE

WHEREFORE Plaintiff Claims:

1. That Plaintiff be appointed to the position of Director of Building Services,

2. That Plaintiff be awarded all lost wages be paid since the time of Plaintiffs original recommendation.

3. To be compensated for pain and suffering, and for the loss wages and impact on future retirement.

4. To have all discriminatory actions against him       stopped now and in the future

5. Damages in this case together with such other relief as the Court deems appropriate.

6. The Court award Plaintiff a reasonable attorney's fee; and

7. The Court award the Plaintiff costs and such other and further relief as appears just and equitable in the circumstances.

COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

*Fentriss Winn*

_____

FENTRISS WINN

COMPLAINT